IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:15-CV-00053-RN

| | |
|---|---|
| **Warner Gibbs, Jr.**, <br><br> Plaintiff, <br><br> v. <br><br> **Carolyn Colvin**, Acting Commissioner of Social Security, <br><br> Defendant. | **Memorandum & Order** |

Plaintiff Warner Gibbs, Jr. instituted this action on April 1, 2015, to challenge the denial of his application for social security income. Gibbs claims that Administrative Law Judge Robert J. Phares erred in determining his residual functional capacity ("RFC"). He also contends that ALJ Phares failed to properly consider his obesity and did not account for his long work history when assessing his credibility. Both Gibbs and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment in their favor. D.E. 27, 29.

After reviewing the parties' arguments, the court has determined that ALJ Phares reached the appropriate decision. ALJ Phares properly evaluated the evidence, including Gibbs's obesity and his work history. Additionally, there is substantial evidence to support the RFC determination that Gibbs is capable of a reduced range of medium work. Therefore, the court denies Gibbs's Motion for Judgment on the Pleadings, grants Colvin's Motion for Judgment on the Pleadings, and affirms the Commissioner's decision.

**I.     Background**

On December 13, 2011, Gibbs filed applications for disability benefits and supplemental security income on the basis of a disability that allegedly began on May 1, 2010. After his claims were denied at both the initial stage and upon reconsideration, Gibbs appeared before ALJ Phares for a hearing to determine whether he was entitled to benefits. After the hearing, ALJ Phares determined that Gibbs was not entitled to benefits because he was not disabled. Tr. at 13–21.

In his decision, ALJ Phares found that Gibbs had the following severe impairments: diabetes mellitus, depressive disorder, seizure disorder, diabetic neuropathy, and Charcot right foot. *Id.* at 15. ALJ Phares also found that his impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 16. ALJ Phares determined that Gibbs had the RFC to perform medium work, except that he will need to avoid working at heights and around hazardous machinery due to his seizure condition; he is restricted to performing unskilled work that involves simple, routine, repetitive tasks, due to his mental disorder; he is restricted to jobs with only occasional contact with co-workers and the general public; and he is unable to perform high-stress work that involves assembly line pace or production quotas. *Id.* at 17. ALJ Phares also concluded that Gibbs was unable to perform any past relevant work but that, considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he was capable of performing. *Id.* at 19–21. These jobs included: cleaner, laundry worker, and hand packager. *Id.* at 20–21. Thus, ALJ Phares found that Gibbs was not disabled. *Id*.

After unsuccessfully seeking review by the Appeals Council, Gibbs commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on April 1, 2015. D.E. 5.

**II.     Analysis**

  **A.     Standard for Review of the Acting Commissioner's Final Decision**

When a social-security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

  **B.     Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650, 653–54 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, then, at step four, the claimant's RFC is assessed to determine whether the claimant can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to

3

step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

   C.   **Medical Evidence**

Several years prior to his alleged onset date, Gibbs was hospitalized and treated for a seizure. Tr. at 264–75. He thereafter returned to work. *Id.* at 39–40. In September 2010, Gibbs was being treated at the Veterans' Administration ("VA"). *Id.* at 717. Treatment records reflect that he was not taking medication but that his diabetes was controlled. *Id.* Gibbs also reported walking three (3) miles per day. *Id.* He had no joint pain or stiffness. *Id.* at 718.

In November 2010 Gibbs reported back pain after moving furniture. *Id.* at 711. He again reported that he walked three miles per day. *Id.* at 712. Gibbs thereafter was admitted to the hospital in May 2011 for treatment of an accidental knife wound to his abdomen. *Id.* at 329–30, 356–57, 360. The following month, Gibbs again reported exercising daily on a treadmill.

In August 2011, Gibbs reported bilateral sensory neuropathy in his feet which was described as both new and slight. *Id.* at 401, 403, 410. Gibbs declined treatment. *Id.* at 403. He also had weight gain but reported that he walked three miles per day and counting "exercise" amongst his activities. *Id.* at 402, 410.

An October 2011 examination showed slight diabetic changes in Gibbs's left eye, and he was directed to follow-up with an eye specialist. *Id.* at 396. In a January 2012 function report, Gibbs reported vision problems as well as numbness in his fingers and toes. *Id.* at 239. He also reported no problems with personal care, doing house and yard work, and being able to drive, bike, and exercise. *Id.* at 235–38. Gibbs estimated that he could walk one mile without stopping.

4

*Id.* at 239. A third party function report completed by his friend made similar observations, although it noted that his walking was limited by his neuropathy but he still exercised at a senior center three times per week. *Id.* at 251–54.

At a March 2012 examination, Gibbs reported neuropathy in the soles of his feet and ankle pain when seated. *Id.* at 383, 386. He again reported walking three miles per day. *Id.* at 384. He was advised to lose weight. *Id.* at 386. A March 20102 consultative evaluation by Dr. Loc Kim Le found that Gibbs could lift and carry 50 pounds frequently and 25 pounds occasionally, and that he could stand or walk six hours in an eight hour workday. *Id.* at 67, 77. He was, however, limited to climbing only occasionally and should avoid concentrated exposure to hazards. *Id.* at 67–68, 77–78. Another state agency consultant, Dr. Margaret Parrish, made similar findings in April 2012. *Id.* at 88–90, 100–01.

Gibbs reported in an April 2012 examination that he exercised and did yardwork. *Id.* at 608. In June 2012 Gibbs was experiencing ankle pain. *Id.* at 530. An x-ray showed no evidence of acute bone injury but did reveal flatfoot configuration with hindfoot valgus. *Id.* In July 2012, Gibbs was diagnosed with Charcot foot, for which he was prescribed custom fit orthopedic shoes. *Id.* at 511–14, 606. He was noted to be wearing flip-flops, which were inappropriate for his condition. *Id.* at 513. Gibbs again reported walking three miles per day for exercise. *Id.* at 601.

In January 2013, Gibbs had an eye examination which found 20/25 vision in both eyes. *Id.* at 593. That same month, Gibbs reported improvement in his neuropathic foot pain with medication. *Id.* at 587. He also stated that he could only walk ¼ mile at a time, which he did twice per day. *Id.* Gibbs was directed to change to custom-molded shoes in March 2013. *Id.* at 583. By May 2013, Gibbs reported headaches and that he was walking for exercise. *Id.* at 579.

Later that month, treatment records note that Gibbs had lost 30 pounds over the previous four to five months through diet and regular exercise on the treadmill and bike. *Id.* at 576.

At a June 2013 doctor's visit, Gibbs stated that his feet felt better with the custom-molded shoes (*id.* at 574) and in July 2013, he reported that medication was working well for his neuropathy (*id.* at 568). An August 2013 treatment note indicated that Gibbs complained of neuropathic right foot pain, for which he was instructed to wear his prescribed shoes, exercise daily, and lose weight. *Id.* at 566. Gibbs reported at this visit that he walked three miles per day. *Id.* at 564.

### D.     Residual functional capacity

As noted above, ALJ Phares determined that Gibbs was capable of medium work with additional limitations.  Medium work typically involves sitting, standing, and/or walking approximately six hours in an eight hour workday. S.S.R. 83-10. Gibbs contends that the medical evidence supports a finding that he is unable to meet the exertional demands of medium work. The Commissioner correctly asserts that substantial evidence supports the conclusion that Gibbs is capable of the demands of medium work.

In support of his position, Gibbs points to the following evidence in the record: in August 2011, Gibbs reported a burning sensation in his feet, he had gained 30 pounds, and he had decreased sensation in his right foot. Tr. 401–403, 471. He was diagnosed with bilateral sensory neuropathy. *Id.* at 403. In June 2012, Gibbs saw a podiatrist because he was experiencing right ankle pain and numbness. *Id.* at 605. Testing revealed collapse of the mid-tarsal joint, weakness in the posterior tibio-fibular joint, and degenerative changes in the mid-foot. *Id.* at 605–06. In January 2013, Gibbs had gained 40–50 pounds and was diagnosed with Charcot bilaterally. *Id.* at 587–90. In August 2013, he was instructed to wear special shoes because of his foot pain. *Id.*

6

at 566. Gibbs also reported that his daily walks were limited by his neuropathy, that he had fallen three times, and that he could only walk for three (3) minutes before needing to rest. *Id.* at 49–50, 254. This evidence, he claims, precludes an RFC for medium work. D.E. 28 at 3–5.

However, the Commissioner points out that evidence in the record supports a finding that Gibbs can perform the exertional requirements of medium work. ALJ Phares stated that he reviewed the entire record and noted Gibbs's subjective complaints, including a statement that he could not walk for more than three (3) minutes. Tr. at 15, 17. ALJ Phares also discussed Gibbs's foot pain, neuropathy and Charcot foot diagnosis. *Id.* at 17–19. Contrary to Gibbs's argument, the record showed that Gibbs reported walking three miles per day, that he had no edema or discoloration in his feet, and he was advised to continue exercising. *Id.* at 384, 564, 566, 601. His January 2012 function report stated that he exercised regularly and was able to walk a mile without stopping. *Id.* at 237–39. Gibbs's statement to providers that he exercised on the treadmill daily contradicts his statement that he can only walk for three (3) minutes. *Id.* at 17, 49–50, 384. Additionally, two state agency medical consultants opined that he could stand or walk six hours in an eight hour workday. *Id.* at 67, 77, 88–90, 100–01. This constitutes substantial evidence supporting ALJ Phares RFC determination. *Turner v. Colvin*, No. 1:13-cv-00761, 2015 WL 502082, at * 7 (M.D.N.C. Feb. 5, 2015) (unpublished) ("Numerous district court cases within the Fourth Circuit similarly reflect the view that ALJ reliance on non-examining state agency physicians' RFC assessments does not constitute error so long as such opinions find support in the entire record."); *Bryant v. Astrue*, No. 3:08CV719, 2009 WL 6093969, at *9 & n. 11 (E.D. Va. Jul. 15, 2009) (unpublished) (affirming ALJ's decision to give non-examining state agency consultants' assessment great weight as "consistent with the actual medical findings and conservative treatment of the claimant's treating physicians, and with [the claimant's] admitted

7

activities of daily living"); *Bracey v. Astrue*, No. 5:07–CV–265–FL, 2009 WL 86572, at *3 (E.D.N.C. Jan. 6, 2009) (unpublished) (finding no error in ALJ's reliance on state agency consultants' opinions where "treatment notes and clinical findings ... indicate[d] similar complaints and assessments as those reviewed by the ... consultants").

Aside from his own statements and those of his friend, Gibbs does not identify additional evidence that ALJ Phares failed to consider but merely points to the same conditions and evidence discussed in the decision. This is inadequate given that a diagnosis alone, without related functional loss, is insufficient to establish a disability. *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (a diagnosis alone does not establish disability; rather, a plaintiff must also show a "related functional loss."). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (alteration in original) (internal quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (alteration in original) (internal quotation marks omitted).

Gibbs has shown only disagreement, not error, with the consideration of the evidence. Because it is not within the province of the court to reweigh the evidence, the Commissioner is entitled to judgement in its favor on this issue.

**E.     Obesity**

Gibbs next contends that ALJ Phares failed to evaluate or consider his obesity and its effects on his ability to perform basic work activities. The Commissioner acknowledges that ALJ Phares did not consider Gibbs's obesity explicitly, but contends that it is harmless error

because Gibbs has not identified any additional limitations that should have been included in the RFC. The court concludes that the Commissioner's point is correct.

If the records show a claimant is obese, the ALJ must consider the obesity in each of the subsequent steps of the analysis. Social Security Ruling ("S.S.R.") 02–lp, 2002 WL 34686281, at *3 (Sept. 12, 2002). An individual's Body Mass Index ("BMI") is an appropriate measure of obesity, and one is considered obese if his or her BMI is 30.0 or greater. *Id.* at *2 ¶ 1. Under S.S.R. 02–lp, obesity alone is an impairment, and obesity can exacerbate the severity of other existing impairments, such as osteoarthritis, hypertension and depression. *Id.* at *1, *3, *5. "The ALJ must assess the entire record to determine the extent to which obesity imposes functional limitations on a claimant, either alone or in combination with other impairments." *Winston v. Astrue*, 4:11–CV–107–D, 2012 WL 40864448, at *3 (E.D.N.C. Sept. 17, 2012); *see also* S.S.R. 02–1p, 2002 WL 3468628, at *4, *6.

Here, Gibbs argues that his obesity impacts his ability to perform work activity. At 68 inches and 247 pounds (in January 2013), Gibbs's qualifies as obese with a BMI of 37.6. Yet ALJ Phares did not discuss this condition or what impact, if any, his obesity had on Gibbs's ability to engage in work activity.

However, the failure to discuss a claimant's obesity under S.S.R. 02-1p may be harmless error if corresponding functional limitations are not established. *See Flythe v. Colvin*, No. 5:13-cv-00273-BO, 2014 WL 2257148, at *3 (E.D.N.C. May 28, 2014) ("Plaintiff does not point to any functional limitations or limiting effects caused by her obesity, and thus the Court finds that any failure of the ALJ to address the effect of plaintiff's obesity with more specificity was harmless."); *Hall v. Colvin*, No. 7:12-cv-00083-BO, 2013 WL 3064012, at *2 (E.D.N.C. June 18, 2013) (ALJ's failure to consider claimant's obesity was harmless error where record did not

9

reflect that her obesity, alone or in combination with other conditions, significantly limited her ability to do basic work activity). Several district courts in the Fourth Circuit have found harmless error in an ALJ's failure to address a claimant's obesity, concluding that the consideration is implicit where the ALJ cites to medical records that themselves discuss the claimant's weight. *See Lehman v. Astrue*, No. 10–2160, 2013 WL 687088, at *7 (D. Md. Feb. 22, 2013); *Moss v. Astrue*, No. 2:11–cv–44, 2012 WL 1435665, at *6 (N.D.W. Va. Apr. 25, 2012); *Smith v. Astrue*, No. 8:10–cv–2624–CMC–JDA, 2012 WL 786944, at *16 (D.S.C. Jan. 18, 2012) (holding that ALJ's failure to discuss obesity was not error where plaintiff could not point to any additional functional limitations in the record) (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)).

ALJ Phares relied on the opinions of the state agency physicians, who had considered Gibbs's weight but opined that he was not disabled. Tr. at 88–90, 100–02. This constitutes substantial evidence supporting his determination. Thus, any error in failing to discuss S.S.R. 02-1p by ALJ Phares is harmless. *Livingston v. Colvin*, No. 3:13-cv-233-MOC, 2014 WL 496484, at * 7 (W.D.N.C. Feb. 6, 2014); *Thompson v. Colvin*, No. 3:12-cv-399, 2013 WL 4854418, at *8 (W.D.N.C. Sept. 11, 2013). Accordingly, this assignment of error is without merit and the Commissioner is entitled to judgment in her favor on this issue.

### F. Credibility

Gibbs also argues that ALJ Phares erred in evaluating his credibility by failing to find him credible based on his long work history. The Commissioner correctly contends that Gibbs's long work history does not render him more credible under the Social Security Regulations.

An ALJ's assessment of a claimant's credibility involves a two-step process. *Craig v. Chater*, 76 F.3d 585, 593–96 (4th Cir. 1996); 20 C.F.R. § 404.1529(a)-(c); S.S.R. 96–7p, 1996

10

WL 374186, at *1 n.1; 2 (July 2, 1996). First, the ALJ must determine whether the claimant's medically-documented impairments could cause the claimant's alleged symptoms. S.S.R. 96–7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally-limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.*; *see also* 20 C.F.R. § 404.1529(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find the claimant's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." S.S.R. 96–7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12-cv-1742, 2013 WL 1314781, at *7 (W.D. Pa. Mar. 28, 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006). To "properly analyze[] credibility," the ALJ must "explain how he decided which of [claimant's] statements to believe and which to discredit." *Mascio v. Colvin*, 780 F.3d 632, 639–40 (4th Cir. 2015).

Here, ALJ Phares discounted Gibbs's credibility. He noted that Gibbs testified that he could only walk for three (3) minutes but medical records showed he reported to providers on numerous occasions that he walked up to three (3) miles per day. Tr. at 19. Although his long work history may indicate a willingness to work, it cannot overcome the medical evidence of record demonstrating that Gibbs's impairments are not as limiting as he represents. Moreover, he offers no support for his argument that his long work history renders him more credible. Where, as here, an ALJ's credibility findings which are supported by specific reasons, the court is required to defer to those determinations. *See Edelco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th

Cir. 1997) ("When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'") (internal citations omitted).

Inasmuch as Gibbs has failed to demonstrate any error in ALJ Phares's credibility assessment, he is not entitled to judgment on this issue.

### III.     Conclusion

For the forgoing reasons, the court denies Gibbs's Motion for Judgment on the Pleadings (D.E. 27), grants Colvin's Motion for Judgment on the Pleadings (D.E. 29), and affirms the Commissioner's final decision.

Dated: December 16, 2015.

                                                              *Robert T. Numbers II*
                                                              ROBERT T. NUMBERS, II
                                                              UNITED STATES MAGISTRATE JUDGE